**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2623-14T4

IN THE MATTER OF RUBY SAUNDERS.

_____

Argued December 12, 2016 — Decided  June 9, 2017

Before Judges Nugent and Haas.

On appeal from the Civil Service Commission,
Department of Labor and Workforce Development,
Docket No. 2014-1004.

Luretha M. Stribling argued the cause for
appellant.

Christopher Weber, Deputy Attorney General,
argued the cause for respondent New Jersey
State Prison (Christopher S. Porrino, Attorney
General, attorney; Lisa A. Puglisi, Assistant
Attorney General, of counsel; Arielle E. Katz,
Deputy Attorney General, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent Civil Service
Commission (Valentina M. DiPippo, on the
statement in lieu of brief).

PER CURIAM

Appellant Ruby Saunders appeals from a July 16, 2014 Civil

Service Commission (CSC) final administrative decision removing

her from her position as a corrections officer recruit at New

Jersey State Prison.  We affirm.

On August 28, 2013, the New Jersey Department of Corrections (DOC), New Jersey State Prison (NJSP), served appellant with a Preliminary Notice of Disciplinary Action (PNDA) charging her with incompetency, inefficiency or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); insubordination, N.J.A.C. 4A:2-2.3(a)(2); conduct unbecoming an employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); neglect of duty, loafing, idleness or willful failure to devote attention to tasks which could result in danger to persons or property, Human Resource Bulletin 84-17 as amended B-2; incompetence or inefficiency, B-9; insubordination: intentional disobedience or refusal to accept order, assaulting or resisting authority, and disrespect or use of insulting or abusive language to a supervisor, C-9; conduct unbecoming an employee, C-11; violation of administrative procedures and/or regulations involving safety and security, D-7; and violation of a rule, regulation, policy, procedure, order or administrative decision, E-1.

Within two weeks of being served with the PNDA, appellant filed a complaint with the DOC's Equal Employment Division (EED), alleging she had been discriminated against based on disability, color and race. Following its investigation of the complaint, the EED issued a letter to appellant informing her it found no evidence

to establish discrimination as a basis for her removal from employment.

Meanwhile, following a departmental hearing, the DOC and NJSP served appellant with a Final Notice of Disciplinary Action (FNDA) dismissing the conduct unbecoming an employee charge under N.J.A.C. 4A:2-23(a)(b), upholding the remaining charges, and removing her from employment.

Appellant appealed to the CSC, which transferred the matter to the Office of Administrative Law (OAL) for a hearing. An Administrative Law Judge (ALJ) conducted a hearing and issued an initial decision upholding the charges and appellant's removal. On July 16, 2014, the CSC issued a final decision adopting the ALJ's findings. This appeal followed.

During the OAL hearing, several witnesses testified on behalf of the DOC and NJSP. Senior Investigator John Doyle testified that on August 17, 2013, he was the Operations Lieutenant at NJSP. NJSP personnel working the 10:00 p.m. to 6:00 a.m. shift found a nine millimeter bullet in Unit C. Finding a bullet on a unit's floor created a heightened, very serious situation: it gave rise to the possibility that a weapon had been brought into the prison. For that reason, the Special Operations Group came to the unit.

According to Investigator Doyle, once the Special Operations Group enters a unit, they go cell to cell, strip-search the

inmates, and escort them to another unit. After the prisoners are removed, a supervising officer assigns available officers to search the cells. That day, Investigator Doyle briefed all the officers about the magnitude of the situation, explaining that a weapon or firearm could be found. He told the officers that due to the seriousness of the situation, they were required to conduct a very diligent and thorough search leaving no stone unturned. Additionally, they were to take their time and be very sure that there was no contraband left in any cell.

A short time after the briefing, Sergeant Zsuzsanna Rogoshewski approached Investigator Doyle. She informed him appellant had just completed a cell search. The sergeant did not believe appellant had thoroughly searched the cell because her search lasted only six minutes from the time the search orders were issued. Investigator Doyle knew the cells being searched were the largest in the institution. Moreover, the particular cells searched by appellant housed two inmates who possessed an extensive amount of property. When Investigator Doyle asked where appellant was, the Sergeant replied that after she told appellant to re-search the cell, appellant said she had to make a phone call and walked off.

Investigator Doyle proceeded to the cell. Over the years, he had seen thousands of cells before and after searches. He

immediately noticed the clothing and other items in the cell were folded and meticulously stored. The clothing did not appear to him as though it had been recently searched, refolded and replaced. Based on his experience, Investigator Doyle knew the cell had not been thoroughly searched. Investigator Doyle explained that an officer's failure to thoroughly search a cell jeopardizes not only the safety and security of the inmates, but also the staff. Investigator Doyle arranged to have another officer search the cell. The officer took approximately an hour and a half to complete the search.

Sergeant Rogoshewski was the area sergeant on August 17, 2013. Her duties included supervising cell searches. She explained that a thorough search consisted of "searching the cell from top to bottom," including any bins, boxes, and anything behind any fixtures. Such a search also included the seams, pockets, and collars of any clothing. That day, the searches began at 11:20 a.m. and were completed at 1:25 p.m.

Six minutes after Sergeant Rogoshewski assigned appellant to search a cell, she returned and said she had completed the task. Questioned by Sergeant Rogoshewski, appellant said she believed she had done a thorough search. At that point, Sergeant Rogoshewski reported the issue to Investigator Doyle, who agreed that the cell had not been thoroughly searched. Sergeant

Rogoshewski summoned appellant, returned to the cell, and demonstrated how appellant was to conduct a "grid search" of the cell. Sergeant Rogoshewski specifically demonstrated how an item of clothing was to be searched and appellant said she understood.

After demonstrating how the cell was to be searched, Sergeant Rogoshewski left. A few seconds later, appellant stepped out of the cell and told the sergeant, "I'm not searching, I'm going to make a phone call." Sergeant Rogoshewski responded, "[t]hat's fine" and dismissed appellant from the search detail. Sergeant Rogoshewski then contacted Sergeant Robin Washington to have her direct appellant to prepare a report.

Sergeant Rogoshewski denied reported accusations that she had a personality conflict with appellant because appellant had a pronounced stutter. The sergeant denied knowing appellant stuttered.

Sergeant Washington did not participate in either the supervision of the search or the search of any cells. Although called first as a witness for NJSP, the sergeant also testified in response to direct examination by appellant's attorney. Contrary to Sergeant Rogoshewski's testimony, Sergeant Washington testified Rogoshewski did not ask her to direct appellant to write a report about the incident. Sergeant Washington also testified she once heard Sergeant Rogoshewski remark during the movement of

prisoners that appellant was "slow." Sergeant Washington thought the remark was inappropriate.

Sergeant Timothy Morris, a team leader of the Special Operations Group, overheard Sergeant Rogoshewski tell appellant to re-search the cell. He also heard appellant's response. Sergeant Morris went to the cell, which did not appear to have been searched at all.

Appellant presented the testimony of Sergeant Carmen A. Sexton and testified on her own behalf. Sergeant Sexton trained appellant at the Police Academy and also had occasion to supervise appellant at NJSP. She testified that in April or May 2013, she and other supervisors, including Sergeant Rogoshewski, were talking. Sergeant Rogoshewski remarked about appellant: "She's slow, she doesn't belong here. She doesn't belong here." Sergeant Sexton disagreed and told Rogoshewski appellant was not slow. She explained appellant merely had a speech impediment and could follow directions and perform tasks correctly.

When appellant testified, she admitted she had been trained to search cells using the grid system. She knew she was to search all "fixtures, lights, walls, floors, [and] plumbing." She also acknowledged she was to search all bins, beds, linens, clothes, books, shelves, cracks in walls, toilets, and sinks. Appellant testified she conducted an efficient, fifteen-minute cell search

during which she examined the beds, clothing lines, clothing, seven containers, and fixtures. She explained that she searched the cell without unfolding and refolding the clothing, and placed each item back where she found it. She denied Sergeant Rogoshewski demonstrated how to conduct a proper search. Rather, the Sergeant called her back into the cell and aggressively instructed her to "[g]o through all this shit again."

Appellant admitted that after Sergeant Rogoshewski left the cell, she searched it for just one minute to see if she missed anything. She ended the search because she felt threatened by Sergeant Rogoshewski, who had a history of humiliating, embarrassing and degrading her. Appellant believed Sergeant Rogoshewski only ordered a re-search to attack and antagonize her. Appellant wanted to make a phone call to "de-escalate" the situation.

Sergeant Rogoshewski testified on rebuttal and denied the remarks appellant and Sergeant Sexton had attributed to her.

After considering the evidence presented by the parties, the ALJ found not only that appellant did not conduct a complete and adequate search of the cell, but also that appellant had refused to follow a direct order to correct her deficient search with a complete and proper search. The ALJ found Sergeant Rogoshewski and Sergeant Morris credible. The ALJ concluded appellant's

behavior violated the Civil Service Rules and Departmental Regulations relied on by NJSP in its FNDA.

Noting appellant had no disciplinary record, the ALJ explained the concept of progressive discipline "may be set aside when the offense under consideration is sufficiently egregious." The ALJ found appellant's offense was particularly serious, her "lackluster effort" contributed to a potential threat of the most serious nature, and she "disregarded the fundamental obligation of a correction officer . . . to comply with orders from a superior officer." The ALJ stated, "[s]uch misconduct, left unpunished, weakens the coherence of the correction officer corps [and] threatens . . . the good order and protections of the facility." The ALJ upheld appellant's removal from employment.

The CSC issued a final administrative determination in which it "accepted and adopted the Findings of Fact and Conclusion as contained in the . . . [ALJ's] initial decision." Appellant filed this appeal.

We affirm the CSC's decision, substantially for the reasons set forth in its final agency decision. We add only the following comments.

Our review of a final agency decision is limited, and we "do not ordinarily overturn such a decision 'in the absence of a showing that it was arbitrary, capricious or unreasonable, or that

A-2623-14T4

it lacked fair support in the evidence.'" In re Carter, 191 N.J. 474, 482 (2007) (citations omitted). Further, we may not substitute our judgment for that of the agency's when "substantial credible evidence supports [the] agency's conclusion[.]" Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). Instead, we "defer to an agency's expertise and superior knowledge of a particular field." Ibid.

We review an agency's disciplinary sanction under a deferential standard and only modify a sanction "when necessary to bring the agency's action into conformity with its delegated authority." In re Herrmann, 192 N.J. 19, 28 (2007) (quoting In re Polk, 90 N.J. 550, 578 (1982)). We will affirm a sanction that is not illegal or unreasonable. Ibid. (citation omitted).

Appellant contends the ALJ's decision to remove her from employment was arbitrary, capricious, unreasonable, and not supported by evidence in the record. She maintains she appropriately searched the cell and was not insubordinate. We disagree.

The ALJ determined that despite the high-risk situation, appellant failed to conduct an adequate cell search in accordance with her training. She subsequently disobeyed Sergeant Rogoshewski's command to re-search the cell properly. Appellant's

one-minute, visual scan for "anything missed" was not a search of the type she had been trained to conduct.

Moreover, appellant's contention Sergeant Rogoshewski ordered an additional search to humiliate, embarrass and degrade her is unsupported by the evidence. As determined by the ALJ, appellant "knowingly chose not to conduct a search consistent with demands of that day[.]"

We also disagree with appellant's contention the ALJ and CSC failed to apply the concept of progressive discipline in upholding her removal from employment.

> [J]udicial decisions have recognized that progressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.
>
> [Hermann, supra, 192 N.J. at 33.]

The "level of seriousness" accompanying appellant's offense warranted her removal from employment at NJSP.

We conclude the ALJ's and CSC's decisions are supported by sufficient credible evidence on the record as a whole. Appellant's arguments to the contrary are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(D) & (E).

11

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION